UNITED STATES *v.* A. W. FABER, INC. (No. 3105) [1]

[1] T. D. 43211.

[REDACTED]

United States Court of Customs Appeals, January 29, 1929

[REDACTED]

*Charles D. Lawrence*, Assistant Attorney General (*Philip Stein*, special attorney, of counsel), for the United States.
*Jerome G. Clifford* for appellee.

[Oral argument December 12, 1928, by Mr. Lawrence and Mr. Clifford]

Before GRAHAM, Presiding Judge, and BLAND and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The case at bar involves three importations of merchandise variously entered as "pencil leads" and "slide rules." The "slide rules" are admitted, by the protest in entry No. N–70791, to have been properly classified, and in that respect the judgment of the court below is affirmed. The official samples show the leads to be of three kinds, black, blue, and red. These leads are all of the same size, namely, approximately 3½ inches in length and seven thirty-seconds of an inch in diameter; they are, admittedly, each more than six one-hundredths of an inch in diameter. Each lead is cylindrical, flat on one end and sharpened at the other, and the leads are packed in pasteboard boxes, three to a box. The black leads are composed of graphite and clay, and the blue and red ones composed of chalk and pigments and wax. The collector classified the black leads as manufactures of graphite, not specially provided for, under paragraph 216 of the Tariff Act of 1922; the others were classified by him as colored leads, not specially provided for, under paragraph 1452 of said act. The importer protested, claiming the goods in each instance to be dutiable under said paragraph 1452 at 6 cents per gross, 10 cents per gross, or 40 per centum ad valorem. There was also an alternative protest under paragraph 214 of said act, as articles composed wholly

·or in chief value of earthy or mineral substances. The latter claim is not urged. On the trial in the United States Customs Court, the ·protests were sustained under the first provision of said paragraph 1452, and the Government has appealed.

~ The relevant portions of the statutes involved are as follows:

PAR. 216. * * * and articles or wares composed wholly or in part of carbon ·or graphite, wholly or partly manufactured, not specially provided for, 45 per ·centum ad valorem.

PAR. 1452. Pencil leads not in wood or other material, 6 cents per gross; leads, commonly known as refills, black, colored, or indelible, not exceeding six ·one-hundredths of one inch in diameter and not exceeding two inches in length, 10 cents per gross, and longer leads shall pay in proportion in addition thereto; ·colored or crayon leads, copy or indelible leads, not specially provided for, 40 ·per centum ad valorem.

In support of its contentions, importer called and examined· one witness, Henry Fera, its secretary and general manager. There was no attempt made to prove any commercial designation of the imported article. Mr. Fera testified, in substance, that the imported mer- ·chandise was refills and was used in mechanical pencils, when the ·original leads in said pencils were exhausted. He further stated that a pencil lead not in wood was a lead intended to be placed in wood, ·square at the ends and not pointed, and was usually between 6 and 7 inches in length. He further gave it as his personal opinion that the expression "pencil leads not in wood or other material" would include this merchandise and that said expression would also include the refills in leads known as eversharp leads, "in a variety of colors, black and colors." The witness further gave it as his understanding ·that the statutory language "colored pencil leads other than refills" refers to leads that are made primarily for the purpose of being ·embedded permanently in wood.

The opinion of this or of any other witness as to the legal effect to be given to any statute can not be controlling, or even material. Any facts which the witness may have in his possession, throwing light upon such construction, are material; the construction of the legal effect of the words, however, is for the court.

An examination of the statute, paragraph 1452, shows that three ·general classes of leads are provided for:

(1) Pencil leads not in wood or other material.

(2) Leads, commonly known as refills, black, colored, or indelible, not exceeding six one-hundredths of an inch in diameter, of any length.

· (3) Colored or crayon leads, copy or indelible leads, not specially provided for.

It seems plain that the first subdivision above was intended to ·embrace such leads as were adaptable and intended for use in pencils made of wood or other material. We have, in other matters, so con- ·strued similar language. *Fensterer & Ruhe* v. *United States*, 1 Ct.

Cust. Appls. 93, T. D. 31110; *United States* v. *Field & Co.*, 14 Ct. Cust. Appls. 376, T. D. 42031.

The common meaning of the term used, "pencil leads not in wood, etc.," is leads for pencils of wood, etc. Other statutes in *pari materia* may be considered in arriving at a conclusion as to the meaning of this language. Paragraph 1451 of the same act provides for duties on pencils generally. It will be observed that in this paragraph mechanical pencils are enumerated separately from pencils. Evidently the Congress was of opinion that the word "pencil" was not broad enough to include mechanical pencils, or desired to make some tariff distinction between the two, and hence specially enumerated the latter. This distinction should be carried into other parts of the act unless a legislative intent to the contrary is evidenced. *Shallus* v. *United States*, 1 Ct. Cust. Appls. 556, T. D. 31552; *Bakelite Corporation* v. *United States*, 16 Ct. Cust. Appls. 378, T. D. 43117. Bearing this in mind, it follows that when the Congress used the word "pencil" in said paragraph 1452 it did not intend to include mechanical pencils.

The second subdivision includes refills not exceeding six one-hundredths of an inch in diameter. The object of this limitation in size is fully set out by Mr. Fera in a letter addressed to the Department of the Treasury relative to this merchandise and which is attached to and a part of the files herein. By this it is stated that the limitation on size of refills was inserted at the request of certain American manufacturers of small-sized refill leads. Mr. Fera also contends that it was the intention of the Senate Finance Committee to include all refill leads not of such limited size in the first subdivision of the paragraph "pencil leads not in wood." With these suggestions in mind we have examined the Senate hearings on H. R. 7456, later the Tariff Act of 1922. These hearings plainly disclose the first proposition of Mr. Fera to be substantially correct, but give no light at all upon the second one. S. Doc. No. 108, 67th Cong., 2d sess., pp. 1898–1900. The language of subdivision 2 must be given its ordinary meaning, and when this is done it appears that refills of a certain size are included therein and that the merchandise before us now is not within that size.

The remaining question is whether these articles of importation are more properly described under the third or first subdivision of the paragraph. The evidence of Mr. Fera shows that they are not intended to be used as permanent leads in pencils. Therefore, under the construction we have adopted, they could not be included within the first subdivision. The blue and red leads are, admittedly, colored; they are, therefore, included within the designation "colored leads," and were properly classified by the collector.

As to the black leads, it is contended that they are not included within the language of the third subdivision of the paragraph, "colored or crayon leads, copy or indelible leads," and hence must be classified as manufactures of graphite. Leaving out of consideration whether they might be properly classified as colored, copy or indelible leads, no reason is perceptible why they may not be classified as crayon leads.

The word "crayon" has been thus defined by Webster's New International Dictionary (1925):

> n. 1. An implement for drawing, made of clay, plumbago, some preparation of chalk, or other material, usually sold in small prisms or cylinders. The black crayon gives a deeper black than the lead pencil. Crayons are often called *chalks*, irrespective of the nature of their composition. The red crayon is also called *sanguine*.

Funk & Wagnalls New Standard Dictionary (1925) also attaches the following meaning to the word:

> n. 1. A slender cylinder of charcoal, prepared chalk, gypsum, and flour, or pipe-clay, white or colored, as with graphite, red ocher, etc., used for drawing on paper, etc. See Pastel. Crayons of all colors are often called *chalks;* and the red crayon, *sanguine*.

These black leads seem, therefore, to come directly within the common meaning of the term "crayon leads."

The black leads being covered by the language of both paragraphs 1452 and 216, the question arises as to the relative specificity of the terms "crayon leads" and "manufactures of graphite." Both paragraphs contain a "not specially provided for" clause.

The *eo nomine* designation of crayon leads must prevail over the words of general description, "articles or wares composed wholly or in part of * * * graphite." *United States* v. *Hillier's Son Co.*, 14 Ct. Cust. Appls. 216, T. D. 41706; *Drakenfeld* v. *United States*, 9 Ct. Cust. Appls. 124, T. D. 37979; *United States* v. *Dunhill*, 13 Ct. Cust. Appls. 310, T. D. 41231. The designation "crayon leads" may be properly said to be a designation by use. Such a designation, as stated in the above last-cited authorities, is more specific than one either of composition or of general description. It follows that the black leads were not properly classified by the collector under said paragraph 216, and that the court below was in error in directing the reliquidation of the entries under the first subdivision of said paragraph 1452, at 6 cents per gross. The importer's protests being broad enough to cover all provisions in said paragraph 1452, it should have been sustained as to the last clause, namely, at 40 per centum ad valorem, on the black leads.

The judgment of the Customs Court is *modified* and the cause is *remanded* for further proceedings in conformity with this opinion.