BEFORE THE FIRST DIVISION, NOVEMBER 23, 1944

No. 49816.—Protests 94169–K, etc., of Applicator Brush Co. (New York).

WALKER, Judge: The issue raised by these protests involves the classification for duty purposes of handles for small brushes. They were assessed with duty at the rate of 33⅓ percent ad valorem under the provision in paragraph 412, Tariff Act of 1930, for "manufactures of wood * * * not specially provided for" and are claimed to be properly dutiable at only 20 percent under the provision in the same paragraph as amended by the Canadian Trade Agreement, T. D. 49752, for "paintbrush handles * * * wholly or in chief value of wood."

The evidence establishes that the handles in the case at bar are used in the manufacture of what are known as hair pencils, which is a type or species of small brush used in painting, as well as for other purposes. Hair pencils have, for many, many years, been uniformly distinguished from brushes in the enactment of tariff provisions. For a rather comprehensive treatment of this matter, see the opinion of the Court of Customs and Patent Appeals delivered by Lenroot, J., in United States v. M. Grumbacher, 27 C. C. P. A. 166, C. A. D. 80.

The position of the defendant is that since the finished products of which the articles at bar are parts, namely, hair pencils, are distinguished for tariff purposes from brushes, the same distinction must be carried out in determining the tariff classifications of the component parts.

The position of the plaintiff is that the distinction made between hair pencils and brushes can have no application to an eo nomine designation for paint-brush handles without any language of limitation and free from ambiguity.

While it is true that no ambiguity appears in the language of the provision in paragraph 412, as amended, under which claim is made by the plaintiff, viz, "paintbrush handles * * * wholly or in chief value of wood," when considered by itself, nevertheless ambiguity does appear when it is considered in

connection with the entire act, and especially in connection with paragraph 1506 wherein the distinction between brushes and hair pencils is made.

In *Charles Hardy (Inc.)* v. *United States*, 21 C. C. P. A. 173, T. D. 46509, the court cited the general rule with reference to ambiguity of statutory tariff terms as follows:

\* \* \* whether or not a given term in a tariff statute is used in an ambiguous manner must be determined, not from the literal meaning of the term, but from the connection in which it is used, and a consideration of the entire statute in which the term is found.

When it is noted that in paragraph 1506, Tariff Act of 1930, a distinction is made between hair pencils and brushes, we think it will be considered that the use of the term "paintbrush handles" in paragraph 412, *supra*, is ambiguous in that it cannot be determined from the language used in the paragraph whether Congress, and, presumably, the negotiators of the Canadian Trade Agreement since the tariff act term was also used in the agreement, intended to continue the distinction made in paragraph 1506.

The general rule of statutory construction in such cases is contrary to the position taken by the plaintiff. In *United States* v. *A. W. Faber, Inc.*, 16 Ct. Cust. Appls. 467, T. D. 43211, it was pointed out that in paragraph 1451, Tariff Act of 1922, mechanical pencils were enumerated separately from pencils, the court observing—

\* \* \*. Evidently the Congress was of opinion that the word "pencil" was not broad enough to include mechanical pencils, or desired to make some tariff distinction between the two, and hence specially enumerated the latter. \* \* \*

In the following paragraph, 1452, "pencil leads not in wood or other material" were provided for, and it was contended that such provision included, among other things, leads for mechanical pencils. After noting the distinction made in paragraph 1451 between pencils and mechanical pencils, the court said:

\* \* \*. This distinction should be carried into other parts of the act unless a legislative intent to the contrary is evidenced. *Shallus* v. *United States*, 1 Ct. Cust. Appls. 556, T. D. 31552; *Bakelite Corporation* v. *United States*, 16 Ct. Cust. Appls. 378, T. D. 43117. Bearing this in mind, it follows that when the Congress used the word "pencil" in said paragraph 1452 it did not intend to include mechanical pencils.

Counsel for the plaintiff has cited in the brief filed in its behalf certain legislative history of the provision for paint-brush handles. Careful examination thereof, however, does not reveal anything that could be considered a legislative intent not to continue the distinction made in paragraph 1506 between brushes and hair pencils.

Judgment will therefore issue overruling the protests.

## DISSENTING OPINION

Oliver, Presiding Judge: I regretfully dissent from the decision of my colleagues herein.

The imported merchandise consists of round, turned wood brush handles, square cut on one end and tapering to a near point on the other end. Four sizes are involved in the present protests and samples of each are before us. The samples measure approximately as follows: Handle No. 3 (exhibit 1), $\frac{3}{16}''$ (at its thickest point) x $5\frac{1}{2}''$; handle No. 4 (exhibit 2), $\frac{7}{32}''$ x $5\frac{7}{16}''$; handle No. 5 (exhibit 3) $\frac{1}{4}''$ x $5\frac{7}{16}''$; and handle No. 6 (exhibit 4), $\frac{9}{32}''$ x $5\frac{3}{4}''$. All these handles, as imported, are natural finish. There are also before us various samples of finished brushes, using these handles. These illustrative exhibits (collective illustrative

exhibit A, illustrative exhibit B and C, and collective illustrative exhibit D) have metal ferrules in which the handles are permanently fixed, and have various qualities, shapes, and sizes of brushes protruding from the metal ferrules. There is also before us a catalog produced by plaintiff (illustrative exhibit E) showing various types of brushes offered for sale by the plaintiff, many of them using handles similar to those here under consideration and variously referred to as brushes "for artist water color," "water color brushes," and "brush for lacquer." None of these brushes is described as a "hair pencil." We also have before us a collection of brushes (21 in number) (collective illustrative exhibit F), being brushes taken from the decided case of *Solo Horton* v. *United States*, 63 Treas. Dec. 143, T. D. 46123, in which case they were identified as exhibit 1. The handles in the brushes in this illustrative exhibit range in size from approximately ⁵⁄₃₂'' x 5¼'' to ¹⁵⁄₃₂'' x 10''. All these brushes have metal ferrules in which the handles are permanently affixed. The brush portions range in size from a few hairs to hair protruding about 1¼'' beyond the ferrule and 1'' wide at the end.

The imported handles were assessed for duty at 33⅓ percent ad valorem under paragraph 412, Tariff Act of 1930, as "manufacturers of wood * * * not specially provided for" on the theory that they are handles used in hair pencils. They are claimed properly dutiable at 20 percent ad valorem under the provision for "paintbrush handles" in said paragraph 412, as amended by the trade agreement with Canada (T. D. 49752).

The presumption of correctness attaching to the classification of the collector has, in my opinion, been overcome by the testimony of the plaintiff's witnesses and this record does not support the collector's contention that these handles are hair-pencil handles and not paint-brush handles as claimed.

The testimony of one of the owners of plaintiff company is to the effect that these handles are used in various types of brushes for various uses such as bronzing brushes and cosmetic brushes used in connection with paints, cosmetics, oils, and chemicals (R. 12/13). When bought in this country he said "We call them paint-brush handles, or in many cases they might be called brush handles" (R.19). *They are always used with metal ferrules.* As to the chief use of brushes made with handles similar to those before us, he testified they were mainly used for paints. "We started with the chain stores for that particular purpose" (R. 24). And again (R. 25):

A. I mean, the man might go to a store to buy a soft hair brush to dust the workings of his watch, to use it as a dusting brush, but we *manufactured it as a paint brush.* [Italics supplied.]

The court directed the witness' attention to a brush in the catalog (illustrative exhibit F) on page 9 thereof described as a "nail polish brush," No. 48. He was asked (R. 24):

Presiding Judge OLIVER. Did you ever hear that brush described as a hair pencil?

The WITNESS. Only in a quill. This is made out of aluminum ferrule, and when we were offered these brushes for import on the other side, sometimes they mentioned the fact that they were hair pencils. We would classify that as a toilet brush.

The only testimony adduced by the Government in support of the collector's classification was from the examiner who stated (R.30/31):

The WITNESS. You see, this card is marked Exhibit 1, and there are some brushes on here which don't belong on Exhibit 1, Judge, but all of these brushes we make are hair pencils.

Mr. MANDELL. For tariff purposes.

The WITNESS. For tariff purposes. Of course, the handles are the same as the Exhibits before the Court here.

Mr. MANDELL. And are they all paint brushes, Mr. McDevitt?

The WITNESS. They are all artists' or lacquering brushes, yes.

I am of the opinion that this falls far short of establishing that the imported handles are dedicated to use as handles for hair pencils.

I am further convinced that the brushes in illustrative exhibit F (those in the *Solo Horton* case, *supra*) are not properly dutiable as hair pencils. In a later case (*United States* v. *M. Grumbacher,* 27 C. C. P. A. 166, C. A. D. 80) our appellate court had under consideration the provision for "hair pencils" in the brush paragraph (paragraph 1506, Tariff Act of 1930). It went into the historical background of that paragraph and said (page 169):

It is elementary that the master rule of construction of tariff statutes is so to interpret them as to carry out the legislative intent. It is clear to us that, although hair pencils are brushes within the common meaning of that term, Congress has never, for tariff purposes, so regarded them.

The court was there considering "brushes" and not "handles," the latter being provided for in the wood schedule of the tariff act. The court's attention was not directed to the legislative history of this handle paragraph when it had under consideration the *Grumbacher* case, *supra*. While Congress, in paragraph 1506, made special provision for hair pencils, aside from "all other brushes," it made no provision for "parts" of hair pencils. In the wood schedule it made provision for paint-brush handles but made no special provision for hair-pencil handles. I do not believe this was oversight or was unintentional but that the Congress intended that no distinction be made.

In the hearings before the Committee on Finance, United States Senate (Tariff Readjustment 1929), Mr. Roy E. Collett, representing the domestic paint-brush manufacturers stated (Vol. 4, page 338):

We have a letter from the Baker Brush Co., of New York, one of the best known *artists' brush and soft-hair brush makers,* to the effect that they have imported between 500,000 and 700,000 *paint-brush handles* from Germany in the last three years * * *.

The statement continues:

These handles from Germany *are the small round turned handles, such as are used in artists' brushes* * * *. We think that we deserve this 33⅓ percent duty which the House has given us in this bill. [Italics supplied.]

On page 347 of the same volume further statement is made referring to "hair-splitting distinction between brushes that apply paint and the round or pencil brushes that are often used for lacquer, varnish, and other finishing materials."

In the Hearings before the Finance Committee, vol. 15, page 109, the representative of the American Brush Manufacturers Association stated:

When it comes to the paint-brush industry, the manufacturers of *small paint-brushes* have been very largely eliminated in this country by the German brushes. [Italics supplied.]

When asked by Senator Walsh:

Are those brushes used by artists?—He answered:

*By artists,* and as marking brushes to mark cases; and *little brushes for odd jobs of painting;* and without the opportunity of making these small brushes, these cheaper grades, we are crippled * * *.

In the Supplement to Tariff Information on items in Tariff Bill of 1930 (H. R. 2667) compiled by the United States Tariff Commission and printed for the use of the Finance Committee of the United States Senate, and the Committee on Ways and Means of the House of Representatives, on page 480, under the title "Par. 1506. Hair pencils in quills or otherwise," appears the following:

*Changes in phraseology.*—The Finance Committee and the Senate separated hair pencils from "all other brushes."

*Production. These articles are used chiefly for applying iodine, etc., to the skin, and in cheap painting sets in tin boxes.* No hair pencils are manufactured in the United States due to the cheap hand labor required and to their low sales value.

*Pencil-shaped artists' brushes containing hair are made in the domestic brush industry, but these, having metal ferrules to hold the hair firmly, are regarded as brushes, rather than as hair pencils.* [Italics supplied.]

It will be noted that the record before us establishes that the imported handles are used *only* with metal ferrules.

From the legislative history, excerpts of which are noted above, it appears that the paint-brush handles on which protection was sought include the small round turned handles for artists' brushes or similar uses. In other words, it would seem that the identical merchandise here involved was intended to be covered by the provision for paint-brush handles in paragraph 412, Tariff Act of 1930, as modified by the Canadian Trade Agreement (T. D. 49752).

It is my opinion, for the reasons stated, the protests herein should be sustained.