(C. D. 1480)

KUNG CHEN FUR CORPN. *v.* UNITED STATES

United States Customs Court, First Division

(Decided December 1, 1952)

*Strauss & Hedges* and *Barnes, Richardson & Colburn* (by *Albert MacC. Barnes, Hadley S. King,* and *Eugene F. Blauvelt* of counsel); and *Brooks & Brooks; Siegel, Mandell & Davidson; Lane, Young & Fox; Lane & Wallace;* and *John D. Rode,* associate counsel, for the plaintiff.

*Charles J. Wagner,* Acting Assistant Attorney General (*Joseph E. Weil,* special attorney), for the defendant.

Before OLIVER, MOLLISON, and FORD, Judges; MOLLISON, J., dissenting

OLIVER, Chief Judge: This case concerns the classification of kidskin plates exported from China and entered at the port of New York.

The merchandise was classified as plates of *dressed* kidskins, and assessed with duty either at 25 per centum ad valorem under paragraph 1519 (a) of the Tariff Act of 1930, as originally enacted, or at 12½ per centum ad valorem under said paragraph, as modified by the trade agreement with Argentina, T. D. 50504.

Plaintiff claims that the merchandise is free of duty under paragraph 1681 of the Tariff Act of 1930, which provides for "Furs and fur skins, not specially provided for, *undressed.*" [Italics added.]

Although defendant seeks to support the collector's classification, much stress is placed on an alternative claim for classification of the merchandise as nonenumerated manufactured articles under paragraph 1558 of the Tariff Act of 1930, carrying a dutiable assessment of 20 per centum ad valorem.

Counsel for the respective parties have stipulated that the plates of kidskins in question, covered by the protests and entries enumerated in the schedule attached to and made a part hereof, are the same in all material respects as the merchandise which was the subject of *Kung Chen Fur Corp.* v. *United States,* 24 Cust. Ct. 24, C. D. 1203, affirmed in *United States* v. *Kung Chen Fur Corporation,* 38 C. C. P. A. (Customs) 107, C. A. D. 447, the record in which case was incorporated herein on motion of plaintiff and without objection from defendant. The incorporated case presented issues identical with those now before us. In other words, the present case is a retrial of the *Kung Chen Fur Corp.* case, *supra.*

The incorporated record, as noted in our decision in C. D. 1203, *supra,* covered over 2,000 pages of testimony with some 42 exhibits. Plaintiff introduced testimony of 24 witnesses, and the Government offered the testimony of 13 witnesses. Both parties produced physical exhibits, illustrative of their respective lines of proof.

Following incorporation herein of the record in the *Kung Chen Fur Corp.* case, *supra,* plaintiff rested, whereupon defendant introduced testimony of 14 witnesses, following which plaintiff offered the testimony of 5 witnesses in rebuttal.

The principal question in this case, as it was in the incorporated one, is whether the kidskins making up the imported plates are *dressed.* The kidskins, prior to being sewn into the form of plates, are subjected to a so-called "China dressing" or "China processing," which was described in our decision in C. D. 1203, *supra,* as follows:

The raw kidskins were first soaked in water until soft; then they were scraped with a certain kind of knife to remove blood, dirt, and flesh from the under side of the skins. Following this, they were placed in vats, called "kongs," into which had been poured a solution consisting of water, millet flour, and sea salt. They remained in this solution from 3 to 7 days, depending upon temperature, type of skin, etc., during which time they were occasionally stirred. After they were removed from the kongs they were hand-kneaded to soften them, and then they were permitted to dry, after which they were again softened by hand and then piled

with a heavy weight on top to keep them flat. Following this, the skins were sorted according to the different types of hair character, after which groups of selected skins were laid out within a marked-out area or block which was the size and shape of the ultimate plates or mats. The rough edges and the bad pieces were trimmed off the skins, and if this resulted in an unfilled area in the marked-out block, other pieces would be fitted therein. Following this, the skins were sewn into the rectangular sheets of fur which are the plates in question.

In holding that such treatment did not produce dressed kidskins, within the meaning of the adjective "dressed," as used in the provision for " * * * plates * * * of dressed * * * kid skins" in paragraphs 1519 (a), *supra*, invoked by the collector, the appellate court in C. A. D. 447, *supra*, with complete affirmance of our reasoning, followed a line of cases which held dogskins and goatskins from China, that had been subjected to substantially the same process as that applied to the present merchandise, to be undressed skins. *United States v. Rotberg & Krieger*, 24 C. C. P. A. (Customs) 441, T. D. 48902; *United States v. Arnhold & Co., Inc., et al.*, 27 C. C. P. A. (Customs) 135, C. A. D. 74; and *United States v. Winograd Bros., Inc.*, 32 C. C. P. A. (Customs) 153, C. A. D. 302. In the *Rotberg & Krieger* case, *supra*, the court said:

We regard it as being of small consequence that the merchandise may have been referred to in China as dressed dogskins, nor is it of particular importance under what name or names the skins were ordered. The question of what they actually are must be determined by United States trade standards.

The court, in the said *Rotberg & Krieger* case, concluded that the China process "did not constitute a dressing process, and that the merchandise in the condition as imported was not dressed furs or dressed fur skins within the meaning of paragraph 1519 (a), *supra*."

In this case, five of defendant's witnesses testified concerning the matter of whether the plates of kidskins under consideration were dressed. Their testimony, however, is merely cumulative to the proof along the same line that appears on behalf of defendant in the incorporated case. We find nothing therein to change the factual situation herein from that in the *Kung Chen Fur Corp.* case, C. D. 1203, *supra*. Accordingly, we adhere to the conclusion reached in the incorporated case and hold the merchandise in question to consist of plates of undressed kidskins. The collector's classification, therefore, is overruled.

Most of defendant's testimony adduced herein and much of Government counsel's argument are directed toward establishing a classification for the present merchandise under paragraph 1558, *supra*. This contention was also presented before this court and the appellate court in the *Kung Chen Fur Corporation* case, C. A. D. 447, *supra*. In discussing that alternative claim in our decision, C. D. 1203, *supra*, we said:

* * * In some of the earlier decisions of the Board of General Appraisers some reference was made to plates, holding them not to be manufactures of fur.

The Board of General Appraisers, in T. D. 13180, decided July 15, 1892, held that certain rat skins, dressed and sewed together, to form plates about 4 feet square, were furs and not manufactures of fur under the Tariff Act of 1890. In so holding the board stated:

> * * * an examination of these plates shows that they have undergone no process of manufacture other than dressing the skins and forming large-sized skins as it were from numerous small ones. The testimony taken by the Board tends to show that these plates are constructed for convenience in dyeing, and that after being dyed they are to be cut into strips and used as trimmings and for manufacturing purposes.

The kidskin plates before us likewise have undergone no process of manufacture. They are kidskins sewn together into the form of plates.

We find the imported kidskin plates not to be fur articles, wholly or partly manufactured, and, therefore, not dutiable under paragraph 1519 (e).

The defendant herein further contends that the imported merchandise is alternatively classifiable under paragraph 1558 of the Tariff Act of 1930 as "* * * articles manufactured, in whole or in part, not specially provided for."

Furs in all conditions are described in paragraph 1519 and paragraph 1681. If the plates in question are furs, they are enumerated, and if enumerated, they cannot fall under paragraph 1558. In the *Winograd Bros.* case, *supra*, our appellate court was of opinion that the provisions of paragraph 1519 (a) for "Dressed furs and dressed fur skins" and those of paragraph 1681 for "Furs and fur skins, not specially provided for, undressed" are more specific than those of paragraph 1558 for "all raw or unmanufactured articles not enumerated or provided for." We are of opinion that the basic issue here involved is whether the kidskins in the plates before us were dressed or undressed, as provided for in paragraph 1519 (a), and that paragraph 1558 of the act has no application here.

On appeal to the United States Court of Customs and Patent Appeals (customs suit No. 4640), the appellant (Government), in its brief, made a special point (point III) in support of its claim to classification under said paragraph 1558. Its argument covered five printed pages (pp. 20–24) of the brief. The appellee (importer), in its brief, likewise made a special point (point III) of its contention, and its argument, in opposition to the Government's position, covered 18 printed pages (pp. 40–57) of its brief. It is thus clear that this claim to classification as a nonenumerated manufactured article was discussed in the opinion of this court (C. D. 1203, *supra*), and was brought to the attention of our appellate court on appeal, and that court weighed the claim thus presented and referred specifically to it.

In its opinion affirming the decision of this court, the Court of Customs and Patent Appeals said (C. A. D. 447, p. 109):

> Both protests contained an alternative claim under the provision in paragraph 1558 of the act for all unenumerated articles manufactured, in whole or in part, not specially provided for, subject to a duty of 20 per centum ad valorem, but this seemingly was not relied upon by the importer before the Customs Court, and before us it is argued expressly that it is not applicable. We, therefore, treat that claim as having been abandoned so far as the importer is concerned.

> The Government, however, did rely upon it below and relies upon it before us *as an alternative claim*—that is, the Government contends before us that if the

collector's classification under paragraph 1519 (a) be held erroneous, it should be held that the merchandise is classifiable as an unenumerated manufactured article under paragraph 1558 and the judgment appealed from modified to that extent. [Italics quoted.]

In holding that said paragraph 1558 had no application, the court, speaking through Chief Judge Garrett, said (p. 116):

Normally, not being made up of dressed kid skins, the merchandise does not fall within the classification provided in paragraph 1519 (a), *supra*, and since it falls within the description of either fur or fur skins it would be classifiable under paragraph 1681, *supra*, if the rule stated in the decision of the *Rotberg & Krieger*, *Arnhold & Co.*, and *Winograd* cases, *supra*, be followed. Being a fur or fur skin it is enumerated in the latter paragraph *and there is no room for the application of paragraph 1558*. [Italics supplied.]

Our appellate court, thus having had the claim to classification under paragraph 1558, *supra*, brought squarely before it, and having held that paragraph not applicable, it is our view, therefore, that we should accept the decision in the *Kung Chen Fur Corporation* case, C. A. D. 447, *supra*, as the law governing the present case.

Accordingly, we follow the decision in C. A. D. 447, *supra*, and hold the Chinese kidskin plates in question to be free of duty under paragraph 1681, *supra*, which covers "Furs and fur skins, not specially provided for, undressed," as alleged by plaintiff.

That claim in all of the protests before us is sustained and judgment will be rendered accordingly.

DISSENTING OPINION

Mollison, Judge: I regret that I am unable to concur in the decision rendered by my colleagues in this case. As I view the matter, as will be developed hereinafter in this dissenting opinion, there is a very important question of statutory interpretation involved in the ultimate determination of the case. I am of the opinion that the application of both logic and authority to that question of statutory interpretation requires a conclusion as to the classification status of the merchandise involved different from that reached by my colleagues.

Some of the material contained in the following dissenting opinion may be repetitive of facts or data contained in the majority opinion. However, in the interest of orderly exposition of what I conceive to be the deciding factor in the case, I have set forth the background situation at some length.

The merchandise involved in these cases, which were consolidated for purposes of trial and disposition, consists of plates of kidskins imported from China which were classified by the collector as "plates * * * of dressed * * * kid skins" and assessed with duty under the provision therefor in paragraph 1519 (a) of the Tariff Act

of 1930 (19 U. S. C. § 1001, par. 1519 (a)) at the rate of 25 per centum ad valorem, if imported prior to the effective date of the modification of paragraph 1519 (a) by the Argentine Trade Agreement, T. D. 50504, or at 12½ per centum ad valorem, if imported subsequent thereto.

The claim relied upon by the importer is for free entry under the provision in paragraph 1681 of the Tariff Act of 1930 for "Furs and fur skins, not specially provided for, undressed." There is no question but that the merchandise at bar consists of plates of kidskins, the issues as raised by the parties being whether they are plates of *dressed* kidskins, and, if not, whether they are classifiable as furs or fur skins.

In those cases where the merchandise was assessed with duty at the rate of 25 per centum ad valorem, an additional claim for duty at the rate of 20 per centum ad valorem under the provision in paragraph 1558 for nonenumerated manufactured articles is included in each protest. This claim, while not specifically pressed, was not abandoned. The claim does not appear in the protests covering the merchandise which was assessed with duty at the rate of 12½ per centum ad valorem under paragraph 1519 (a), as modified.

The record made on the trial of the issues herein presents afresh the issues presented in the case of *Kung Chen Fur Corp.* v. *United States*, decided by a majority of the first division of this court—the writer dissenting—on January 13, 1950, in favor of the plaintiff's claim, the said decision being reported in 24 Cust. Ct. 24, C. D. 1203. Upon appeal by the defendant, the decision was affirmed by our appellate court under the style of *United States* v. *Kung Chen Fur Corporation*, reported in 38 C. C. P. A. (Customs) 107, C. A: D. 447.

It was stipulated and agreed between counsel in the case at bar that the merchandise covered by the protests and entries listed in the protest schedule, which is attached hereto and made a part of this decision, is in all material respects the same as the merchandise the subject of the *Kung Chen Fur Corp.* case, *supra*. The record in that case was incorporated as part of the record in the instant case by agreement of counsel, and the plaintiff thereupon rested. The defendant then offered the testimonial evidence of 14 additional witnesses, and the plaintiff offered the evidence of 5 witnesses in rebuttal.

In the incorporated case, the majority of this court, and the majority of the Court of Customs and Patent Appeals on appeal thereto, were of the opinion that the processes to which the kidskins involved had been subjected in China prior to being sewn into plates (the so-called "China dressing process") did not dress the same within the meaning of the term "dressed," as used in the provision for "plates * * * of dressed * * * kid skins," under which they were classified. The courts further held that the formation of the skins

into plates was not a dressing process, and that the imported plates were not plates of dressed kidskins.

The record on the subject of dressing was quite elaborate, and, besides an exposition of the processes to which the skins were subjected in China, contained the opinions of numerous persons engaged in the fur industry as to whether the plates as imported were plates of dressed kidskins. The majority of our appellate court, commenting upon this phase of the case, said:

> The courts, of course, are not bound by the opinion testimony, although at times it may be helpful, but it may be said that if it were binding, we think the great weight of such testimony in the instant case supports the contention made on behalf of the importer.

Five of the 14 witnesses called by the defendant in the case at bar were interrogated with respect to their opinions on the subject of whether the plates in issue were dressed. The testimony of these witnesses—while very convincing to the mind of the writer—was, however, only cumulative to that which was already in the case by virtue of the incorporated record, and the writer reluctantly concludes that it is not of such weight as would be persuasive of a holding different from that reached by the majorities of the courts in the incorporated record on the subject of dressing. The writer reiterates his belief that plates of kidskins such as those at bar are the type of merchandise intended to be covered by the congressional designation "plates * * * of dressed * * * kid skins," but in view of the contrary holding of the majorities of the customs courts based upon an exhaustive record and a full discussion of the facts and law applicable, is constrained to accept that holding as dispositive of the issue as to dressing.

This being the situation, the next question is whether the plates of kidskins at bar are classifiable as "Furs and fur skins, not specially provided for, undressed," as claimed by the plaintiff, or are neither furs nor fur skins, and not being otherwise provided for, are classifiable under the catch-all provision in paragraph 1558 of the Tariff Act of 1930 for nonenumerated manufactured articles, as claimed by the defendant, as an alternative to the classification made by the collector under paragraph 1519 (a), *supra*.

This issue, although not in the precise form hereinafter discussed, was presented to the courts in the prior case, the record in which is here incorporated, but was not treated at length in the opinions filed therein, the main issue there having been the question of dressing. The defendant's position, as indicated by its brief, appears to be that in the structure of the paragraphs in the tariff act specifically dealing with fur or fur products, the Congress distinguished between fur and fur skins on the one hand, and plates of fur skins on the other; that while Congress provided for plates of certain furs, including those of

dressed kidskins, it did not provide specifically for plates of undressed kidskins; and that, having distinguished between furs and fur skins on the one hand, and plates on the other, it could not have intended that plates of undressed kidskins should be classifiable as furs or fur skins.

An examination of paragraphs 1519 and 1681 of the Tariff Act of 1930 is convincing that the argument made on behalf of the defendant is well taken. It will be observed that in paragraph 1519, provision is made for furs and fur products in all stages of advancement from the dressed skin to the finished product. Disregarding for the moment the rates of duty involved and focusing attention upon the classification scheme as revealed in the paragraph, we find that provision is made in subparagraph (a) for "Dressed furs and dressed fur skins." The meaning of the term "fur skins" presents no difficulty, but it has been pointed out by counsel for the plaintiff that the term "furs" may have a very broad significance, including within its scope everything from the skin itself to a finished article of clothing. Note the definitions of "fur" contained in Webster's New International Dictionary, 2d edition, 1945, or Funk & Wagnalls New Standard Dictionary, 1942.

However, Congress, in paragraph 1519, very clearly evidenced the scope it intended the terms "furs" and "fur skins" to have, for in subparagraph (b) thereof provision is made for furs in the stage of advancement beyond the skin stage, i. e., "Manufactures of fur * * * further advanced than dressing, prepared for use as material." In this category, it should be well noted, Congress included all plates except those of dog, goat, and kidskins, thus recognizing the plate form of fur as a distinct tariff entity from the "furs and fur skins" form. In the last two subparagraphs of paragraph 1519, Congress provided for products of fur in the state of highest advancement, viz, in the form of articles wholly or partly manufactured.

Here is a distinct pattern set out by the Congress of its classification of furs and fur products, evidencing intent to classify furs and fur products in accordance with their stage of advancement, i. e., in the lowest category are furs and fur skins, which manifestly contemplates furs no further advanced than the pelt form; next are furs further advanced but still usable only as material, in which category plates are specifically included; and in the highest category are furs which have been wholly or partly made into articles.

As hereinabove stated, it should be well noted that in the second category, i. e., furs, advanced, Congress, by the use of the word "including," manifested its intent that plates of fur should be classified in this category. The fact that it specifically excluded from the application of the rate thereunder plates of dog, goat, and kidskins

is of no moment—what is of importance is that Congress regarded the plate form of fur as an advanced form, separate and distinct from the "furs and fur skins" form.

Presumably, plates of dressed dog, goat, and kidskins were provided for in subparagraph (a) because the rate applicable to them was intended to be the same as that applicable to dressed furs and dressed fur skins, and Congress quite evidently regarded them as a distinct tariff entity from dressed furs and dressed fur skins because it did not use words of the nature of "including" or "such as" which are customarily employed when manifesting an intent to include a specific commodity or article as part of the family of a more general term previously used. On the contrary, in the case of paragraph 1519, Congress specifically included in the family of advanced furs those in plate form, and thereby excluded them from its category of furs and fur skins.

In paragraph 1681 of the free list are found the identical words used in subparagraph (a) of paragraph 1519, viz, "furs" and "fur skins." To hold that plates of undressed kidskins were classifiable thereunder would be to disregard the evident scheme of Congress in the classification of furs and fur products and hold that the words in the free list had a meaning different from the same words as used in the dutiable list.

Unless a contrary legislative intent appears, it is presumed that a legislative distinction made in one portion of an act will be carried into other portions of the act. *United States* v. *Cooper Corporation et al.*, 312 U. S. 600, 606; *United States* v. *A. W. Faber, Inc.*, 16 Ct. Cust. Appls. 467, 470, T. D. 43211; *Bakelite Corporation et al.* v. *United States*, 16 id. 378, 381, T. D. 43117; *Shallus* v. *United States*, 1 id. 556, 558, T. D. 31552; 50 Am. Jur., Statutes, § 271. There is nothing to show that Congress intended the terms "furs" and "fur skins" as used in paragraph 1681 of the Tariff Act of 1930 to have any other meaning than the same terms as used in paragraph 1519 of the same act. Those terms as used in paragraph 1519 do not include plates of fur, and it follows that plates of undressed kidskins are not, for tariff purposes, "furs" or "fur skins" and do not take classification under the free list provision for "Furs and fur skins, not specially provided for, undressed, " in paragraph 1681.

This being so, and such plates of undressed kidskins being excluded from classification under subparagraphs (a) and (b) of paragraph 1519, *supra*, and there being no other enumeration in the tariff act providing for them, either directly or by similitude, they must take classification under either the nonenumerated unmanufactured articles provision in paragraph 1558, or in the nonenumerated manufactured articles provision therein. As hereinbefore noted, it is clear that Congress regarded plates of fur as being in an advanced stage of fur, and in the

category of manufactures of fur. Proper classification, therefore, is under the nonenumerated manufactured articles provision in paragraph 1558.

In the brief filed on behalf of the plaintiff, its counsel argues that the evidence which was adduced at the trial of the issues herein other than that contained in the incorporated record does not materially alter or rebut that in the incorporated record, and contends that in this situation the doctrine of *stare decisis* requires this court to follow the decision of the appellate court in the incorporated case.

In its determination of the issue as to whether the free list tariff designations of "fur" or "fur skins" were applicable to plates of undressed kidskins, the majority of the appellate court apparently considered that inasmuch as, in a broad sense, plates fall within the description of fur or fur skins, they were covered by the free list provision. So far as appears from the opinion rendered by the majority, the interpretation of those terms was confined to that basis, and the question of law presented by the expression *in the present statute* of a congressional plan or scheme for the classification of fur or fur products was not brought before the court.

The case before us is of considerable complexity, and upon the outcome may depend the disposition of a very large number of cases other than those here involved. The writer believes that in such circumstances every arguable issue should be examined in order that the ultimate decision shall dispose of all the issues and questions of law involved, and does not believe that the rule of *stare decisis* will preclude that full and complete consideration of all of the aspects of the matter that its importance and intricate nature warrant.

The claim for duty at the rate of 20 per centum under paragraph 1558 is made in each of the protests enumerated in the protest schedule, attached to and made a part of our decision herein, except protest Nos. 137651–K, 145317–K, 148920–K, 151325–K, 151703–K, 153846–K, 154822–K, 154823–K, 158929–K, and 162802–K. In all cases, except those just enumerated, the claim for duty at the rate of 20 per centum ad valorem should be sustained, and the protests overruled in all other respects. In the cases just enumerated, the protest claim should be overruled, without affirming the action of the collector.