GENERAL CHAIN & BELT COMPANY v. UNITED STATES (No. 4963)[1]

---

[1] C.A.D. 698.

United States Court of Customs and Patent Appeals, December 19, 1958

*Allerton deC. Tompkins* for appellant.

*George Cochran Doub*, Assistant Attorney General and *Richard E. FitzGibbon*, Chief, Customs Section for the United States.

Before O'CONNELL, Acting Chief Judge, and WORLEY, RICH, and MARTIN, Associate Judges

O'CONNELL, Acting Chief Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, C.D. 1971, overruling the importer's protest and sustaining the collector's classification of the merchandise here involved as "cutting tools of any kind containing more than one-tenth of 1 per centum of vanadium, or more than two-tenths of 1 per centum of tungsten, molybdenum, or chromium," dutiable at 30 per centum ad valorem under the provisions of paragraph 352 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802.

The importer, here as below, contends primarily that the merchandise should have been classified under paragraph 329 of the Act of 1930, as modified by the General Agreement on Tariffs and Trade, supra, as "Chain and chains of all kinds, made of iron or steel;" secondarily, and alternatively, that it should have been classified under paragraph 353, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 126, T.D. 52739, as "articles having as an essential feature an electrical element or device;" and thirdly, and also alternatively, that it should have been classified under one of several other enumerated paragraphs which, for reasons which will be given below, it is unnecessary to consider here in detail.

The pertinent provisions of the Act read as follows:

Paragraph 352 of the Tariff Act of 1930:

> Par. 352. Twist and other drills, reamers, milling cutters, taps, dies, die heads, and metal-cutting tools of all descriptions, and cutting edges or parts for use in such tools, composed of steel or substitutes for steel, all the foregoing, if suitable for use in cutting metal, not specially provided for, 50 per centum ad valorem; cutting tools of any kind containing more than one-tenth of 1 per centum of vanadium, or more than two-tenths of 1 per centum of tungsten, molybdenum, or chromium, 60 per centum ad valorem. The foregoing rates shall apply whether or not the articles are imported separately or as parts of or attached to machines, but shall not apply to holding or operating devices.

Paragraph 352, as modified, supra:

352 Cutting tools of any kind containing more than one-tenth
 of 1 per centum of vanadium, or more than two-tenths
 of 1 per centum of tungsten, molybdenum or chromium_ 30% ad val.

Claimed under:

Paragraph 329, as modified, supra:

329 Chain and chains of all kinds, made of iron or steel:
 Not less than three-eights of one inch in diameter_____ ½¢ per lb.
 * * * * *· * *
 Less than five-sixteenths of one inch in diameter_____ 2¢ per lb.

Paragraph 353, as modified, supra:

353 Articles having as an essential feature an electrical element or device,
 such as electric motors, fans, locomotives, portable tools, furnaces,
 heaters, ovens, ranges, washing machines, refrigerators and signs,
 finished or unfinished, wholly or in chief value of metal, and not specially
 provided for:

The merchandise consists of so-called "mortise chains" employed in conjunction with guide bars and sprockets as the operating portions of machines which are driven by electric motors and which are used for cutting blind holes in wood or similar materials. Each chain is made up of a series of links, each of which comprises two side plates, and a center plate held together by pins. Each link also includes a cutting edge as an integral part. The chain when in use passes over a guide bar and a sprocket, and is driven by an electric motor. When this assembly is pressed against the wood being worked or processed, the cutting edges of the links cut into the wood to form the desired hole.

The court below held, and the decision on that point does not appear to be disputed here, that the instant articles are chains, and would be properly classifiable under paragraph 329 if they were not more specifically provided for elsewhere.

The appeal as presented here thus raises the following issues:

1. Are the articles cutting tools within the meaning of paragraph 352?
2. If so, are they excluded from that paragraph as being "operating devices"?
3. Is the provision of paragraph 352 for "cutting tools of any kind" more specific than the provision in paragraph 329 for "chains of all kinds"?

We shall consider those issues in the order above given.

We think the chains are clearly cutting tools. They are designed for cutting and for no other purpose. The cutting edges are integral portions of the plates which, together with the pins, make up the chains and, as testified by the importer's witness Joseph Joy, if the plates are removed, there is no chain left. The fact that the pins and plates also take part in moving the cutting edges into and out of operative position does not alter the fact that the chain as a whole is primarily and essentially a cutting instrument. This is not a situation

in which a chain serves to drive a separate element or elements which do the cutting. Here the cutting elements themselves are merely arranged in the form of a chain and that particular arrangement does not, in our opinion, alter the character of the assembly from that of a cutting tool.

For similar reasons, we agree with the Customs Court that the instant chains are not "operating devices" within the meaning of paragraph 352 and hence are not excluded from that paragraph. It is true that the cutting edge forms only a portion of each plate, and that the pins and the remaining portions of the plates serve to bring the edges into cutting position and to move them while they are cutting. However, many cutting tools, for example, drills, which are provided for eo nomine in paragraph 352, have substantial portions which take no part in the actual cutting except to feed the cutting edges into the work. It is evident that a drill cannot properly be excluded from paragraph 352 merely because it has a stem which, per se, performs no cutting function; and it would be equally illogical to exclude a cutting chain from that paragraph because it is not composed entirely of cutting edges. The chains here involved should be considered as unitary devices and, when so considered, they are clearly cutting tools rather than operating devices.

The decisions relied on by appellant to show that the merchandise here involved is not classifiable under paragraph 352 have been carefully considered but, while some of them involved holdings that various articles were not cutting tools, they are thought to be nowise controlling here. None of them involved an interpretation of the words "operating devices," nor did any of them involve chain cutters of the kind here under consideration. In our opinion, therefore, they have no application to the instant case such as would require a conclusion different from that above indicated.

For the reasons given, the instant tools satisfy the requirements of paragraph 352 and are properly classifiable thereunder unless they are more specifically provided for elsewhere.

Appellant contends that the provision of paragraph 329 for "Chain and chains of all kinds, made of iron or steel," and having certain specified dimensions, is more specific than the provision in paragraph 352 for "Cutting tools of any kind containing more than one-tenth of 1 per centum of vanadium, or more than two-tenths of 1 per centum of tungsten, molybdenum or chromium." It is difficult to compare the scope of those provisions as to the number of different articles which they respectively include. Obviously there are many cutting tools which are not chains, and there are many chains of any specified range of dimensions which are not cutting tools.

Paragraph 329 is more specific in that it gives particular ranges of size, but paragraph 352 appears to be more specific as to the material

of which the articles are made, since it calls for specified amounts of vanadium, tungsten, molybdenum or chromium and in effect is thus limited to particular alloys of iron or steel, whereas paragraph 329 recites iron or steel broadly. ▆▆▆ It appears therefore that the competing provisions are fairly well balanced as to scope, and under such circumstances paragraph 352, which is a use provision, must prevail over the structural provision of paragraph 329, *Drakenfeld & Co.* v. *United States*, 9 Ct. Cust. Appls. 124, T.D. 37979; *United States* v. *A. W. Faber, Inc.*, 16 Ct. Cust. Appls. 467, T.D. 43211; *United States* v. *Lansen-Naeve Corp.*, 44 CCPA 31, C.A.D. 632, and cases there cited.

For similar reasons, paragraph 352 must take precedence over paragraph 353, which is not a use paragraph and which is, moreover, couched in extremely broad language to include a wide variety of articles which include electrical elements as essential features.

The importer also suggests that the instant chains are articles composed in part of cutting tools and hence are not classifiable under paragraph 352. As above indicated, however, we are of the opinion that the chains in their entireties are cutting tools and are therefore properly placed under that paragraph.

With respect to the other alternative classifications contended for appellant's brief contains the following statement:

> In the event this court find that the chain in question is not covered by Paragraph 352, and in addition concludes (for some reason not now known by us) that it is not covered by either Paragraph 329 or Paragraph 353, then we rely upon the other alternative claims as specified on pages 2–3 above.

In view of that statement, and since we find that the instant merchandise is covered by paragraph 352, it becomes unnecessary to consider the other alternative claims.

The judgment of the United States Customs Court is *affirmed*.