KUPFER BROS. *v.* UNITED STATES (No. 641).[1]

1. ADMINISTRATIVE CONSTRUCTION.

It is a well-established rule that where statutory language has been given a long-continued administrative construction, and there is a reenactment of the statute in substantially the same language, it is presumed the administrative construction was adopted.

2. PAPER, PLAIN OR SURFACED, AND METAL COATED.

Reviewing the history of the relevant clause in tariff act of 1909 and the construction given to the previous acts, paper, whether plain or surfaced to be coated, metal coated, is found to be dutiable under paragraph 411 of that act as "papers with coated surface or surfaces * * * if wholly or partly covered with metal or its substitutes" at 5 cents per pound and 20 per cent ad valorem.

## United States Court of Customs Appeals, November 22, 1911.

APPEAL from Board of United States General Appraisers, G. A. 7169 (T. D. 31298).

[Affirmed.]

*Brown & Gerry* and *Comstock & Washburn* for appellants.

*Wm. L. Wemple,* Assistant Attorney General (*Martin T. Baldwin* on the brief) for the United States.

Before MONTGOMERY, SMITH, BARBER, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court: The merchandise in question consists of plain paper which has been coated with metal. A portion of the paper is produced by applying a metal wash to a plain paper. The remainder is produced by pasting metal leaf upon a plain paper, with a subcoating applied for the purpose of causing adhesion of the metal when put on. No other distinction need be pointed out between the two classes of paper, as in the view we take of the case both are alike dutiable as assessed.

The importation was assessed as paper coated with metal at 5 cents per pound and 20 per cent ad valorem under paragraph 411 of the tariff act of 1909. The pertinent provisions of this paragraph are as follows:

411. Papers with coated surface or surfaces, not specially provided for in this section, five cents per pound; if wholly or partly covered with metal or its solutions (except as hereinafter provided), or with gelatin or flock, or if embossed or printed, five cents per pound and twenty per centum ad valorem; papers, including wrapping paper, with the surface decorated or covered with a design, fancy effect, pattern or character, whether produced in the pulp or otherwise, but not by lithographic process, four and one-half cents per pound; if embossed, or wholly or partly covered with metal or its solutions, or with gelatin or flock, five cents per pound and twenty per centum ad valorem: *Provided,* That paper wholly or partly covered with metal or its solutions, and weighing less than fifteen pounds per ream of four hundred and eighty sheets, on a basis of twenty by twenty-five inches, shall pay a duty of five cents per pound and twenty-five per centum ad valorem. * * *

---

[1] Reported in T. D. 32041 (21 Treas. Dec., 579).

The contention of the importer is that the words "if wholly or partly covered with metal or its solutions," which appear in the second clause of the paragraph quoted, are to be referred to the preceding words "paper with coated surface or surfaces," and that unless the paper has been given a previous coating the fact that it is coated with metal does not bring it within the terms of this second clause. In other words, that to make metal-coated paper dutiable under this clause it must appear that the metal coating is imposed upon a previously surface-coated paper.

The Government, on the other hand, contends that the qualifying words "if partly or wholly covered with metal or its solutions" apply to all papers, and that it is sufficient to show that the paper is covered with metal or its solutions.

The history of this provision is as follows: Paragraph 420 of the tariff act of 1890 imposed a duty of 35 per cent ad valorem on papers known commercially as surface-coated papers and manufactures thereof. This paragraph was interpreted by the Board of General Appraisers as including paper whose coating consisted of metal or of metal leaf. In the matter of Louis Dejonge & Co., G. A. 1125 (T. D. 12353), and in the matter of L. Heller & Co., G. A. 1389 (T. D. 12793).

In 1894 the provision was embodied in paragraph 308 and covered surface-coated papers and manufactures thereof.

In the matter of the protest of the Graham Paper Co., G. A., 4025 (T. D. 18627), the Board of General Appraisers held that a paper coated with a composition called "argentine," consisting of tin, lead, and other metals, fell within this paragraph.

In the act of 1897, paragraph 398 read as follows:

Surface-coated papers not specially provided for in this act, two and one-half cents per pound and fifteen per centum ad valorem; if printed, or wholly or partly covered with metal or its solutions, or with gelatin or flock, three cents per pound and twenty per centum ad valorem. * * *

This paragraph, it will be noted, introduced the higher rate of duty on metal-coated paper. Under this statute, papers like those here involved were by the Treasury Department in actual practice treated as metal-coated papers and assessed for the higher rate of duty, and this practice continued during the entire period that the tariff act of 1897 was in force, and no distinction was made because of the presence or absence of a coating placed upon the paper before the metal was applied. No question of the validity of assessments under this paragraph was ever raised before the board, so far as we have been able to ascertain, and in the opinion of the board in the present case it is suggested that the contention now raised by the importers was never seriously urged under the life of the old act.

The present act of 1909 is not essentially different from that of 1897.

It is said by the importer:

The second clause of paragraph 411 specifies four separate qualifications:
1. Metal coated.
2. Gelatin or flock coated.
3. Embossed.
4. Printed.

It would seem self-evident that whatever any of these qualifications may relate to, whether it be paper or surface-coated paper, they must all be held to relate to the same thing. It can not be maintained that the provision for embossed paper relates to embossed surface-coated paper while the provision for printed paper relates to plain printed paper or vice versa, or that the provision for metal-coated paper includes a plain paper metal coated, whereas the provisions for embossed and printed papers are limited to embossed or printed surface-coated papers.

At first blush there would appear to be considerable force in this contention, but keeping in mind the history of the legislation we are to look at the language employed to see if we can gather a true meaning consistent with that given to substantially similar language by the administrative department during the time that the act of 1897 was in force. For it will be noted, with reference to this question, that it would be difficult to point a distinction between the two acts.

Undoubtedly all the provisions of the second clause of paragraph 411 here in question relate to paper with a coated surface or surfaces, and, undoubtedly, in order to bring embossed paper or printed paper within the provisions of the second paragraph, such paper must be surface coated. And so it may be said of metal-coated paper, or paper coated with gelatin or flock, that it must likewise be surface-coated paper. But we think it does not follow from this concession that it must be paper coated previously to the operation of being covered with metal or its solutions or with gelatin or flock. The second clause of this paragraph may be construed as referring to surface-coated paper and should be construed as if the language employed were as follows: "If wholly or partly covered with (i. e., if the coating of such surface-coated paper consists of) metal or its solutions, or with gelatin or flock (i. e., if the coating of such surface-coated paper consists of gelatin or flock), or if (such surface-coated paper be) embossed or printed."

This interpretation does no violence to the language employed and results in giving effect to what we believe was the manifest intention of Congress. It also gives force to the well-established rule that where statutory language has been given a long-continued administrative construction a reenactment of the statute in substantially the same language is presumed to have adopted the interpretation thus given.

One further point is urged, and that is that if the interpretation indicated be given this act, the language occurring in later clauses— "papers, including wrapping paper, with the surface decorated or

covered with a design, fancy effect, pattern, or character, whether produced in the pulp or otherwise, but not by lithographic process four and one-half cents per pound; if embossed, or wholly or partly covered with metal or its solutions, or with gelatin or flock, five cents per pound and twenty per centum ad valorem "—is unnecessary and redundant. It may be conceded that this language was unnecessary. The reason for its introduction, however, is not difficult to ascertain. The section was dealing with papers which had been given a somewhat lower rate of duty than that included in the first and second clauses of the paragraph. This language may have been employed for the purpose of making it clear that, even though papers should fall within the class providing for the lower rate, yet it was not the intent that (if such papers were embossed or wholly or partly covered with metal or its solutions, or with gelatin or flock) therefore the lower rate should prevail; and the higher rate was reasserted. But if we assume that the clause is redundant and wholly unnecessary for any purpose, we think the language employed in the second clause, in view of the history of the legislation upon the subject and the construction given to the previous acts, leaves no uncertainty as to the intent of Congress.

The board held this importation dutiable, as falling under the second clause of the paragraph, and in so holding committed no error. The decision of the board will be *affirmed.*

DE VRIES, Judge, did not sit in this case.