(C. D. 906)

H. Reeve Angel & Co., Inc. *v.* United States

United States Customs Court, Second Division

(Decided December 27, 1944)

*Brooks & Brooks* (*Frederick W. Brooks* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Joseph E. Weil*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and LAWRENCE, Judges; LAWRENCE, J., not partici-
pating

KINCHELOE, Judge:    This suit is for the recovery of certain customs duty alleged to have been improperly assessed on certain imported merchandise.   The merchandise is invoiced as "Whatman" filter paper.   It was returned by the examiner as "Filtering paper circles," and was classified for duty by the collector as "paper cut or stamped into designs or shapes, etc.," at 30 per centum ad valorem under that portion of paragraph 1413 of the Tariff Act of 1930, reading:

PAR. 1413. Papers and paper board and pulpboard, including cardboard and leatherboard or compress leather, embossed, cut, die-cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, bands, strips, or other forms, or cut or shaped for boxes or other articles, plain or printed, but not lithographed, and not specially provided for;  *  *  *.

The merchandise is claimed by plaintiff to be filtering paper and therefore dutiable at 2½ cents per pound and 7½ per centum ad valorem under the *eo nomine* provision therefor in paragraph 1409 of said act of 1930, as modified by the trade agreement with the United King-dom, T. D. 49753, which modification is limited to "Filtering paper, valued at 75 cents or more per pound."

Upon the trial it was conceded by the defendant that the merchandise in question is filtering paper and not tissue paper; that it is valued at more than 75 cents a pound, and that the circles and the sheets out of which they were made were chiefly used for filtering purposes at and prior to the enactment of the present tariff act (R. 3, 4, 10).

Exhibits 1 and 2 were received in evidence by consent as represent-ative of the merchandise involved, except as to difference in the size of the circles in which this merchandise is imported, exhibit 1 repre-senting a chemically prepared filter paper not washed with acid, and exhibit 2 being a chemically prepared filter paper which has been washed with hydrochloric and hydrofluoric acid (R. 5, 6, 12).

Thomas L. Harrocks, vice president of the plaintiff company, testi-fied that filtering paper of the class of exhibits 1 and 2 is used com-mercially in this country only in circles, and that while some of it is imported in sheets it is always cut into circles before it is used; that it is not imported or used in rolls; that it is not used for straining coffee, but only in chemical laboratories for separating solids from liquids; that the sheets out of which exhibits 1 and 2 were made are not tissue paper; that the tissue paper for straining coffee, which is a special kind of tissue paper, is made out of jute or the inner bark of a mulberry tree, while exhibits 1 and 2 are made from rags; and that during all the time he (witness Harrocks) has been with the importing firm, i. e., since 1919, filtering paper like exhibits 1 and 2 has always been classified by the customs officials as filtering paper (R. 11–20).

Thomas M. Mints testified that he is president of E. H. Sargeant & Co. of Chicago, and has dealt in the involved merchandise since 1918; that he buys it from the plaintiff and has sold it and observed its use; that its only use is for filtering by chemists and scientists; that it is only used in circles, and that he does not know what they would use sheets for; that the circles start from a size of about 2 inches and go up into larger diameters, depending on the size of the funnel in which they are to be used; that the customs classification of merchandise like exhibits 1 and 2 since 1918 has been as filtering paper at New York and Chicago (R. 22, 23).

Edwin Walker testified that he has been a wholesale jobber in paper for the past 36 years; that he has visited and observed the products of 300 or 400 paper mills in this country, and has traveled in South America and Europe on buying expeditions. He has enumerated many kinds of papers that he dealt in and has seen made in this country, including filtering and tissue paper. He further testified that "paper is first manufactured in rolls and is afterwards sheeted"; that a large percentage of papers is cut into sheets before they are put to use, although some kinds of paper are used both in rolls and in sheets, such as newsprint, as also wrapping paper.

In view of the conceded facts that the involved merchandise is filtering paper, and not tissue paper, and that the circles and the sheets out of which they were made were chiefly used for filtering purposes at and prior to the enactment of the present tariff act, the issue before us is really reduced to one of law; namely, whether the descriptive *eo nomine* provision of paragraph 1413 of the tariff act for "Papers * * * cut * * * or stamped into designs or shapes," etc., or the provision of said paragraph 1409 for "filtering paper," which is an *eo nomine* designation by use, more properly applies to the imported merchandise. The Government, of course, relies on the recent decision in *United States* v. *Huber Co.*, 30 C. C. P. A. 183 (C. A. D. 231), as supporting the collector's classification of the present merchandise under said paragraph 1413. In that case the merchandise consisted of paper disks which were invoiced as coffee filter papers, and was likewise claimed dutiable as filtering paper under said paragraph 1409 of the tariff act. The collector held that the merchandise consisted of tissue paper cut to shapes, and, while classifying it under paragraph 1413 as paper, cut or stamped into designs or shapes, he applied the rate of duty prescribed for tissue paper in paragraph 1404 under the proviso therein reading as follows:

*Provided,* That no article composed wholly or in chief value of one or more of the papers specified in this paragraph shall be subject to a less rate of duty than that imposed upon the component paper of chief value of which such article is made:

The rate under paragraph 1413 presumably was lower than that under paragraph 1404.

This court in *Huber* v. *United States*, 9 Cust. Ct. 95 (C. D. 669), held that the uncontradicted testimony of plaintiff's one witness in that case showed, at least *prima facie*, that paper of the kind from which the paper disks there in question were cut was, at and before the passage of the Tariff Act of 1930, not commonly or commercially known as tissue paper, and that the paper disks, as well as the paper from which they were cut, were chiefly used for filtering purposes at and before June 17, 1930. The claim under said paragraph 1409 was accordingly sustained by this court.

We think a brief review of the cases on the question of filtering paper is apropos. In *Taiyo Trading Co.* v. *United States*, T. D. 46426 (63 Treas. Dec. 966), it was held by Judge Dallinger that pieces of tissue paper cut into forms or shapes, which made them adaptable for particular and specific uses, were dutiable under paragraph 1413 of the Tariff Act of 1930 as papers, cut or stamped into designs or shapes, as classified by the collector, rather than as filtering paper under paragraph 1409 of said act, as claimed. No contention was therein made that the merchandise was not tissue paper, and no chief use of the merchandise seems to have been shown.

In Abstract 27264 (65 Treas. Dec. 1348) the merchandise consisted of different sizes of circular disks of tissue paper exclusively used for filtering coffee. They had been assessed for duty either under paragraph 1413 or 1404 of the Tariff Act of 1930, and were claimed dutiable as filtering paper under paragraph 1409. It was again not disputed that the paper disks were composed throughout of tissue paper. The decision in *Taiyo Trading Co.* v. *United States*, *supra*, was therefore held controlling, and the claim under paragraph 1409 was overruled.

In *Crest Corporation* v. *United States*, T. D. 48888 (71 Treas Dec. 535), certain disks of tissuelike paper which were assessed for duty under paragraph 1404 of the Tariff Act of 1930, as tissue paper or similar paper cut into forms, were again claimed to be dutiable as filtering paper under said paragraph 1409. It was shown that the disks were not composed of tissue paper, but of paper made specially for filtering coffee. This court in sustaining plaintiff's claim stated:

"Filtering paper" is unquestionably a tariff designation by use, and would predominate over any other *eo nomine* designation not one of use, such as "tissue paper." The uncontradicted testimony of the only witness herein seems to establish affirmatively that the chief, if not the sole use, of the imported merchandise is for filtering purposes, namely for filtering coffee, and brings it directly within the tariff designation of "filtering paper." At any rate plaintiff has certainly made out a *prima facie* case to that effect.

The Government relied on the cases of *Taiyo Trading Co.* v. *United States*, *supra*, and Abstract 27264, *supra*, as supporting the collector's

classification under paragraph 1404. On this point this court stated further as follows:

We think a careful reading of the two cited cases will show that they are not the same as the present one, and that they are not at all in conflict with our holding in the present instance, for the reason that the merchandise in said two cases was, upon the records therein presented, evidently considered as ordinary tissue paper cut into the form of disks, which happened to be used for filtering coffee as well as for other purposes. In the present instance the merchandise is shown affirmatively, or at least *prima facie*, to consist of filtering paper made and put up as such, and sold and used as such, and shown to be different in its texture and adaptability for such purpose from so-called tissue paper. And the provision for filtering paper in said paragraph 1409 being without qualification, limitation, or restriction, it of course covers filtering paper in any shape or form. The fact that it is made or cut to fit a certain size coffee percolator does not change the character of the importation from that of filtering paper, as the only or chief use of the merchandise is still for filtering purposes. Nor can filtering paper cut to size be said to be a manufacture of filtering paper any more than reducing the size of a sheet of writing paper could be said to be a manufacture of such writing paper.

No appeal was taken by the Government from the above decision of this court.

In *H. V. Albrecht et al.* v. *United States*, 1 Cust. Ct. 204 (C. D. 46) disks of tissuelike paper for filtering coffee were again before this court. The merchandise was assessed for duty under paragraph 1404 of the Tariff Act of 1930 as tissue paper, or articles made therefrom, or under paragraph 1413 as paper cut into forms, and were claimed dutiable under said paragraph 1409 as filtering paper. It was shown that the disks were used solely for filtering coffee, and as this court considered that the relevant facts in that case were the same as those in the *Crest* case, *supra*, the same ruling was followed in holding the merchandise dutiable as claimed.

While the appellate court reversed our decision, it did so solely for the reason that plaintiff's testimony did not establish that on and prior to June 17, 1930, merchandise of the class to which the imported disks belonged, namely, the paper from which they were cut into circles, was also chiefly used for filtering purposes. *United States* v. *Albrecht et al.*, 27 C. C. P. A. 112 (C. A. D. 71). Presumably, if such fact had been established the finding of this court would not have been disturbed, as the appellate court considered such fact to be the sole question in the case, and in reversing our decision they did so without expressing any view as to the proper classification of the merchandise, and without approving the classification of the collector.

Circular paper disks for filtering coffee were next the subject of our decision in *Huber Co.* v. *United States*, 9 Cust. Ct. 95 (C. D. 669). The examiner reported the merchandise to be tissue paper disks, and duty was assessed thereon by the collector under the mandatory minimum rate of duty provision of paragraph 1404 of the Tariff Act of 1930, as articles composed of tissue paper. The merchandise was,

of course, claimed to be dutiable under said paragraph 1409 as filtering paper. This court held that the uncontradicted testimony of plaintiff's one witness showed at least *prima facie* that the paper disks in question, as well as the paper from which they were cut, were at and before the passage of the tariff act used chiefly for filtering paper; also, that the paper from which said disks were cut was not commonly or commercially known as tissue paper. And as this seemed to supply the factor that was referred to as missing by the appellate court in the *Albrecht* case, *supra*, the merchandise was therefore again held more properly dutiable under said paragraph 1409, as claimed, than as assessed.

On appeal by the Government that decision was also reversed in *United States* v. *Huber Co.*, 30 C. C. P. A. 183 (C. A. D. 231), but this time for a new reason. The appellate court was in agreement with this court, however, that the testimony *prima facie* established that the involved disks were not cut from tissue paper, and that the chief use of the disks and of the paper from which they were cut was, at and before the passage of the present tariff act, for filtering purposes. It stated that it could not therefore sustain the collector's classification thereof under paragraph 1404 as tissue paper cut into shapes, inasmuch as neither filtering paper nor disks cut therefrom are embraced within the provisions of said paragraph. It also stated that but for the provisions of paragraph 1413 the merchandise would be classifiable as filtering paper under paragraph 1409, under the general rule that an *eo nomine* designation includes the article in all its forms, except where a contrary legislative intent appears. It nevertheless held the merchandise dutiable under paragraph 1413, being evidently influenced by what it considered to be the Congressional intent as shown by the legislative history, and, in so doing, remarked:

> We are of opinion that the term "papers" as used in the paragraph includes plain filtering paper. Evidently the trial court was of the same opinion, its holding being that paragraph 1409 is more specific than paragraph 1413, as applied to the instant merchandise.

It is true that this court found the provision for "filtering paper" to be more specific than the provision in said paragraph 1413 for "papers * * * cut * * * into designs or shapes." But the said provision for "filtering paper" is more than an ordinary *eo nomine* designation. It is essentially an *eo nomine* designation by use, just as much as newsprint paper, wrapping paper, paper stock, agricultural implements, etc., and such designation has long been held in the construction of customs laws to control and prevail over an ordinary *eo nomine* or descriptive provision in the classification of imported merchandise. This point was not discussed or touched upon by the appellate court, and it is for this reason that we are reluctant to follow its holding in the *Huber* case, *supra*, as we consider the principle of construction

regarding *eo nomine* designations by use to be too important and of such long standing to be lightly set aside, and we are therefore loath to believe that such was the intention of the court. We think that this point may probably have been overlooked by the court, as it was not specially raised in the case, although the provision for filtering paper was characterized by us in the *Crest* and *Albrecht* cases, *supra*, as being an *eo nomine* use designation. We therefore prefer that the appellate court pass on the present case more definitely before considering their last holding as final or conclusive, or applying it to the instant merchandise.

In regard to the legislative history on the subject of filtering paper, we find that the provision first appeared in paragraph 419, Tariff Act of 1890, reading:

Par. 419. Papers known commercially as copying paper, *filtering paper*, silver paper, and all tissue paper, white or colored, made up in copying books, reams, or in any other form, 8 cents per pound, and in addition thereto 15 per centum ad valorem; * * *. [Italics ours.]

The same provision for filtering paper appeared in paragraph 307 of the Tariff Act of 1894 at the rate of 35 per centum ad valorem.

The Act of 1897 provided as follows:

Par. 397. Papers commonly known as copying paper, stereotype paper, paper known as bibulous paper, tissue paper, pottery paper, and all similar papers, white, colored or printed, weighing not over 6 pounds to the ream of 480 sheets, on a basis of 20 by 30 inches, and whether in reams or any other form, 6 cents per pound and 15 per centum ad valorem; if weighing over 6 pounds and not over 10 pounds to the ream, and letter copying books, whether wholly or partly manufactured, 5 cents per pound and 15 per centum ad valorem; crepe paper and *filtering paper*, 5 cents per pound and 15 per centum ad valorem. [Italics ours.]

The act of 1909 provided:

Par. 410. Papers commonly known as copying paper, stereotype paper, bibulous paper, tissue paper, pottery paper, and all papers not specially provided for in this section, colored or uncolored, white or printed, weighing not over 6 pounds to the ream of 480 sheets, on the basis of 20 by 30 inches, and whether in reams or any other form, 6 cents per pound and 15 per centum ad valorem; * * * crepe paper and *filtering paper*, 5 cents per pound and 15 per centum ad valorem: *Provided,* That no article composed wholly or in chief value of one or more of the papers specified in this paragraph shall pay a less rate of duty than that imposed upon the component paper of chief value of which such article is made. [Italics ours.]

Par. 415. Jacquard designs on ruled paper, or cut on Jacquard cards, and parts of such designs, cardboard and bristol board, 35 per centum ad valorem; press boards or press paper, valued at 10 cents per pound or over, 35 per centum ad valorem; paper hangings with paper back or composed wholly or in chief value of paper, 25 per centum ad valorem; wrapping paper not specially provided for in this section, 35 per centum ad valorem; paper not specially provided for in this section, 30 per centum ad valorem: *Provided,* That *paper* embossed, or *cut,* die-cut, or stamped *into designs or shapes,* such as initials, monograms, lace, borders, bands, strips, or other forms, or cut or shaped for boxes, plain or printed but not

lithographed, and not specially provided for in this section, shall be dutiable at 35 per centum ad valorem; articles composed wholly or in chief value of paper printed by the photogelatin process and not specially provided for in this Act, 3 cents per pound and 25 per centum ad valorem.   [Italics ours.]

The act of 1913 provided as follows:

PAR. 323.   Papers commonly known as copying paper, stereotype paper, bibulous paper, tissue paper, pottery paper, letter-copying books, wholly or partly manufactured, crepe paper and *filtering paper*, and articles manufactured from any of the foregoing papers or of which such paper is the component material of chief value, 30 per centum ad valorem.   [Italics ours.]

PAR. 332.   *Papers* or cardboard, *cut*, die cut, or stamped *into designs, or shapes*, such as initials, monograms, lace, borders, or other forms, and all post cards, not including American views, plain decorated, embossed, or printed, except by lithographic process, and all papers and manufactures of paper or of which paper is the component material of chief value, not specially provided for in this section, 25 per centum ad valorem.   [Italics ours.]

Filtering paper was again specially provided for without qualification in paragraph 1309 of the act of 1922 and by paragraph 1409 of the present act of 1930, respectively, at the rate of 5 cents per pound and 15 per centum ad valorem.   And papers cut into designs and shapes have been provided for by paragraph 1313 of the act of 1922, and paragraph 1413 of the act of 1930, respectively, at the rate of 30 per centum ad valorem.

It will be seen from the foregoing that "filtering paper" has been specially or separately provided for through all the tariff acts from 1890 to that of 1930, inclusive, and that the provision for paper cut into designs or shapes first appeared in paragraph 415 of the act of 1909, and has been continued without material change to paragraph 1413 of the present act.

The appellate court in its said decision in the *Huber* case, *supra*, refers to the fact that the proviso to paragraph 415 of said act of 1909 in regard to papers cut into forms was enacted after the decision of the Circuit Court of Appeals, Second Circuit, in the case of *Hamilton* v. *United States*, 167 Fed. Rep. 796 (T. D. 29519), which arose under the Tariff Act of 1897 and involved the classification of plain paper stamped into shapes with lacelike effects for placing on tops of packages of candy or under finger bowls.   The question was whether such articles should be classified simply as paper not specially provided for under paragraph 402, or as manufactures of paper not specially provided for under paragraph 407.   The said court held that as the improvement of the material had not interfered with its distinguishing characteristics it was still dutiable as paper and not as a manufacture of paper.

Our appellate court next referred to the case of *Knauth, Nachod & Kuhne* v. *United States*, 3 Ct. Cust. Appls. 183 (T. D. 32465), which involved merchandise under the act of 1909 consisting of printed advertising cards with the outline of a picture die-cut into them after

the manner of a stencil. The merchandise was classified under the proviso to paragraph 415 as paper die-cut, plain or printed, and was claimed to be dutiable as printed matter under paragraph 416 of said act of 1909. The court stated in that case that the proviso to paragraph 415 of the act of 1909 appeared to have been enacted in view of the decision in *Hamilton* v. *United States, supra,* for the purpose of imposing an increased rate of duty upon paper both printed and die-cut with designs.

It must be borne in mind, however, that in both of above cases the question of classification was simply between an *eo nomine* designation and a descriptive provision of the tariff act, and under the circumstances it would have been difficult for the court to arrive at any other conclusion. We think the construction of the law in those cases can have no bearing or application, however, to merchandise specially provided for in the tariff act under an *eo nomine* designation by use, such as for "filtering paper," which use designations, as stated above, have invariably been held to control over ordinary *eo nomine* or descriptive terms in the tariff classification of imported merchandise.

The case of *Kupfer Bros. Co.* v. *United States,* 7 Ct. Cust. Appls. 86 (T. D. 36423), discussed by our appeals court, is also in the same category, the question there being simply whether certain articles composed of metal coated paper, die-cut in the form of strips and embossed with a small ornamental design, were classifiable under paragraph 324 of the act of 1913 as manufactures of metal-coated paper, or under the descriptive provision of paragraph 332 for "Papers *. * * cut, die cut, or stamped into designs or shapes," etc. While the rule of *ejusdem generis* was gone into by the court in that case under said paragraph 332, we think such question would have no application and would be entirely eliminated in a case where the imported merchandise came directly within an *eo nomine* designation by use, such as "filtering paper."

In *United States* v. *Snow's United States Sample Express Co.,* 8 Ct. Cust. Appls. 351 (T. D. 37611), it is stated in the syllabus that:

Where Congress has provided for an article eo nomine in one paragraph of a tariff act, and in another paragraph of the same act employs language comprehensive of the other designation, and rates it for duty according to *use* or when used for a certain purpose, there is manifested a strong evidence of an intention upon the part of Congress to make that use controlling and to make the designation by use operate as an exception to the eo nomine designation.

Note also *Drakenfeld & Co.* v. *United States,* 9 Ct. Cust. Appls. 124 (T. D. 37979), on ceramic colors, wherein it was held that a designation according to a specific use prevails over a competing description of a general character, without special limitation as to use or other qualification. Also *United States* v. *A. W. Faber, Inc.,* 16 Ct. Cust. Appls. 467 (T. D. 43211), wherein it was held that the classification of pencil leads was controlled by the use designation of

"crayon leads" rather than by the provision for "manufactures of graphite."

These cases appear to us to be directly in point, and the numerous authorities cited therein show that said rule of construction was long ago considered *stare decisis*.

In the said *Huber* case, *supra*, the appellate court also dwells on the fact that in the "Notes on Tariff Revision," 1909, the attention of Congress was called to the case of *Murphy* v. *United States*, 148 Fed. Rep. 336, the comment on which is found on page 529 under the head of "Filtering paper" following the wording of paragraph 397 of the Tariff Act of 1897 which provided for filtering paper. The comment reads as follows:

DECISIONS AND INTERPRETATIONS.—In *Murphy* v. *United States* (148 Fed. Rep., 336; T. D. 26927, January 22, 1895) it was held that filtering paper cut into disks remained filtering paper for tariff purposes and was not dutiable as a manufacture of paper.

COMMENTS AND SUGGESTIONS.—A paragraph amended to meet these conditions is submitted herewith.

The court then remarks that "The suggested amendment does not appear in the volume, possibly because it was thought that said proviso of paragraph 415, *supra*, was sufficient to meet the 'conditions' created by the decision there cited."

Of course, such remark is a mere surmise and can hardly be taken as showing any positive intent that said proviso to paragraph 415 was meant by Congress to apply to filtering paper cut into disk form and to supersede paragraph 410. If any inference can at all be drawn from the absence of the suggested amendment, we think the only reasonable one would be that it was finally decided not to recommend any tariff change with reference to filtering paper. Furthermore, it is significant that notwithstanding the new proviso in paragraph 415 of the act of 1909, Congress in paragraph 410 of the same act again provided for filtering paper in exactly the same way as it did in paragraph 397 of the previous act of 1897, with a new proviso, however, "That no article composed wholly or in chief value of one or more of the papers specified in this paragraph shall pay a less rate of duty than that imposed upon the component paper of chief value of which such article is made." It is just possible, we think, that this latter proviso was the amendment intended to meet the "conditions" created by the said *Murphy* case, *supra*, particularly as paragraph 410 included the provision for filtering paper.

Again, if it had been the intent by the proviso to said paragraph 415 of the act of 1909 to bring disks of filtering paper under that paragraph, as intimated by the appellate court in the *Huber* case, *supra*, then it is all the more significant that this court (then the Board of General Appraisers) in Abstract 24511 (20 Treas. Dec. 14) again held disks cut from filtering paper, ready for use in filtering, to be dutiable

under paragraph 410 of that act as "filtering paper" instead of under said proviso to paragraph 415, the court citing the *Hamilton* and *Murphy* cases, *supra*. No appeal was taken from that decision, and as there has been no change in the tariff provision for filtering paper in the subsequent tariff acts, we think the doctrine of legislative approval of judicial interpretation may therefore well apply.

Moreover, the testimony of plaintiff's witnesses in the instant case shows that filtering paper disks of the class and kind here involved have been classified by the customs officials as "filtering paper" under the tariff acts of 1913, 1922, and 1930, apparently right up to the time of the decision of the appellate court in the *Huber* case, *supra*, in March 1943, the present merchandise having been imported in September 1943.

This would be strong additional reason for holding the merchandise dutiable as filtering paper, under the doctrine of legislative approval of long-established departmental practice. On this point we quote from the decision in *Bache & Co.* v. *United States*, 11 Ct. Cust. Appls. 314 (T. D. 39129), as follows:

> Furthermore, it is a well-known rule of construction in tariff cases that a long-established departmental practice in the classification of merchandise for duty should be regarded with favor by the courts, and that "the implied approval and adoption thereof by Congress in the reenactment of the applicable provisions of the law in essentially similar terms should have the effect and consequence of establishing the status of the article for tariff purposes, and that this should prevail until changed by legislative action."—Osceola Mill & Elevator Co. *v.* United States (11 Ct. Cust. Appls. 139; T. D. 38938).

Note also *United States* v. *Bernard, Judae & Co.*, 13 id. 444 (T. D. 41346), and *Kupfer Bros.* v. *United States*, 2 Ct. Cust. Appls. 302 (T. D. 32041).

Counsel for plaintiff in their brief argue and draw attention that as filtering paper is not imported or used in rolls, and as paper is first manufactured in rolls and thereafter cut into sheet form, all sheets of paper would be dutiable under said paragraph 1413 of the act of 1930, and there would be no filtering paper dutiable under the *eo nomine* provision therefor in paragraph 1409 of the tariff act or of said trade agreement. That if disks of filtering paper are to be considered as paper cut into shapes, then the rectangular sheets from which the disks are cut have also been cut to shape. That all of the words and phrases modifying "designs or shapes" in paragraph 1413 have a connotation of something fancy or unusual. That a circle is not a fancy or unusual shape any more than a rectangle. Also, that if Congress intended that the provision of said paragraph 1413 for papers, cut into designs or shapes, should reach out and invade other paragraphs of the tariff act, it would have so expressed itself and used more explicit language as it did in the case of paragraphs 1529 and 1552 of

the act of 1930, or the proviso to paragraph 31 of the act of 1922, which read as follows:

PAR. 1529. * * * all the foregoing, and fabrics and articles wholly or in part thereof, finished or unfinished * * * by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, * * *.

PAR. 1552. * * * and all smokers' articles whatsoever, and parts thereof, finished or unfinished, not specially provided for, of whatever material composed. * * *.

PAR. 31. * * * *Provided,* That all such articles (except photographic and moving-picture films), whether or not more specifically provided for elsewhere, shall be dutiable under this paragraph.

We think there is also considerable merit in the points just referred to.

In view, therefore, of all the additional facts and fuller discussion of the law on the subject of filtering paper in the present instance, we do not feel justified in following the holding of the appellate court in the *Huber* case, *supra.* On the contrary, we feel it necessary to again hold the *eo nomine* use designation of "filtering paper" in paragraph 1409 of the Tariff Act of 1930, to control over the more general descriptive provision in paragraph 1413 for papers, cut into designs or shapes, in the classification of merchandise like the imported. The claim of the plaintiff under said paragraph 1409 is therefore sustained.

Judgment will be rendered accordingly.